The testimony of Vail, one of the execution creditors, goes rather to confirm this view of the case, than otherwise. He says there was no understanding with the bankrupt that he should have back the property levied upon except through an arrangement proposed by A. R. Vail & Co. to Paris, that if he would reduce the rent of the farm to three hundred and fifty or four hundred dollars, they would become responsible for the rent, and the property might go back into the hands of the bankrupt; which proposition, Vail says, was made at the suggestion of the bankrupt after the levy of the execution. This proves that after the execution was served, and all the property of the bankrupt was secured by seizure upon it, a proposition to reduce the rent, and have the property go back into the hands of the bankrupt, was in fact made to Paris. Now, was this proposition a mere afterthought, first suggested after the levy of the execution, or did it originate in a preconceived design, existing at or before the confession of the judgment? If no such design is proved to have been entertained by the creditors, the presumption is strong, from the testimony, that the bankrupt had the matter then in contemplation; for, before the property was taken, and, we may conclude, before the confession of judgment, for one followed the other almost immediately, he told Stephen Roberts, as we have already seen, that unless he could make an arrangement with Paris, and get a reduction of the rent, he should not pay him. Taking, then, the declarations of the bankrupt before and after the confession of judgment, and putting them together, I think it must be inferred that he consented to the judgment willingly, knowing that all his property would be immediately taken in execution, and expecting by that means to get the rent reduced, and then have the property restored to him. There is another part of the testimony, which ought not to be omitted. It appears that thirteen cows seized on the execution were afterwards returned to the bankrupt, kept by him ten or twelve days, and then sold by him to a clerk in the store of one of the execution creditors. The bankrupt, on his examination, says the cows were returned to him in consequence of a question arising, whether the cows belonged to him or to Paris; that he sold them to make a payment on the execution; and that after the sale they were driven away in the night time, for the purpose of concealing from Paris where they were.

From all the circumstances of this case, I repeat, I am forced to the conclusion, that the confession of the judgment was voluntary on the part of the bankrupt, and was given for the purpose of compelling Paris to reduce the rent of the farm, and, if that could not be effected, then to defeat his debt entirely, contemplating bankruptcy as the ultimate resort. The confession of judgment was on the first of February, the day the bankrupt law went into operation; the rent became due to Paris the first of March, and the petition in bankruptcy was filed the thirtieth of March, all following in regular succession, and all taking place within the space of two months. From the view I have taken of the case, it follows, that the bankrupt is not entitled to a discharge; and a discharge is accordingly refused him.

———

CHASE, The. See Cases Nos. 2,332–2,335.

CHASE v. The ALICE TAINTER. See Cases Nos. 194–196.

CHASE (BOWEN v.). See Case No. 1,720.

———

## Case No. 2,625.

### CHASE v. CHASE.

[Nowhere reported, opinion not now accessible.]

———

CHASE (CLARKE v.). See Case No. 2,845.

———

## Case No. 2,626.

### CHASE et al. v. CRARY et al.

[24 How. Pr. 159.]

District Court, S. D. New York. June Term, 1855.

COLLISION—BETWEEN TOWS — DEFECTIVE ENGINE —JOINT NEGLIGENCE — LIBEL AGAINST VESSELS JOINTLY—AGAINST OWNERS JOINTLY.

[1. A libel for damages caused by the joint negligence of two vessels may be maintained jointly against them. Smith v. The Creole and The Sampson, Case No. 13,033, followed. The Moxey, Case No. 9,894, distinguished.]

[2. Where the negligence of one vessel only is proved, the decree may be against her, and in favor of the other vessel. Smith v. The Creole and The Sampson, Case No. 13,033, followed.]

[3. A libel may likewise be maintained against the owners of the vessel jointly.]

[4. A tow stopped in time to enable an approaching tug and barge in tow to cross her bows. The latter slowed, stopped, and signaled the other to go ahead, which he did. The signaling tug failed to change her course, and, being unable to check her progress by backing, a collision took place. Held, that the signaling tug was in fault.]

[Distinguished in Boyer v. The Wisconsin and The Hector, Case No. 1,756.]

[5. Where a tug's engine is not strong enough to back against the wind, and thereby avoid a collision, she is guilty of negligence in exposing other vessels to danger by reason of the weakness of her engines.

[6. After a vessel damaged by collision has been repaired, the court will not allow for additional work alleged to be necessary to make the vessel good, unless the evidence clearly establishes the necessity.

[7. Speculative and uncertain testimony as to the depreciation of a vessel damaged by collision is insufficient to sustain an allowance therefor.]

In admiralty. This libel was filed by [Sylvanus G. Chase and others] the owners of